# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 15-80960-WRS
                                                         Chapter 7
STACY L. DANLEY II
STEPHANIE DANLEY,

        Debtors

LIBERTY BANK AND TRUST COMPANY
SUCCESSOR BY MERGER TO FIRST
TUSKEGEE BANK,

        Plaintiff                          Adv. Pro. No. 15-8061-WRS

    v.

STACY L. DANLEY II and
STEPHANIE DANLEY,

        Defendants


## MEMORANDUM DECISION

       This adversary proceeding is before the Court on the motion for summary judgment filed

by Liberty Bank and Trust Company ("Liberty Bank"),[1] (Doc. 16), and the motions to remand or

abstain filed by Stacy and Stephanie Danley (together, "the Danleys").  (Docs. 20 and 23).

Liberty Bank asks this Court to order the Danleys to vacate certain real property, while the

Danleys seek to set aside a foreclosure deed and ask for money damages.  The Court held a

hearing on June 15, 2016, at which Liberty Bank appeared through counsel Kristen Abbott and

Stacy Danley appeared in person; Stephanie Danley did not appear.  The Danleys filed a response

in opposition to the motion for summary judgment.  (Doc. 23).  For the reasons set forth below,

---

[1] The Plaintiff was formerly known as First Tuskegee Bank.  *See* <u>In re Danley</u>, 540 B.R. 468, 470 n.2 (Bankr. M.D. Ala. 2015).  To avoid confusion, the Court will refer to the Plaintiff as "Liberty Bank" at all times throughout this opinion.

the Danleys' motion to remand or abstain is GRANTED IN PART and DENIED IN PART.

Liberty Bank's motion for summary judgment is GRANTED IN PART. This case will be

REMANDED to the Circuit Court of Lee County, Alabama.


## I.  FACTS & PROCEDURAL HISTORY

This case is the latest episode of Liberty Bank's long-running effort to recover its

collateral from the Danleys. The Court has previously related much of the tortured history of that

effort, *see* In re Danley, 540 B.R. 468 (Bankr. M.D. Ala. 2015), and will only repeat so much of

that history as is necessary to dispose of this case.

### A.  The Note and Mortgage

On September 21, 2006, the Danleys obtained a loan from Liberty Bank in the amount of

$425,000. In return the Danleys executed a note promising to repay Liberty Bank that amount

plus interest, and executed a mortgage in favor of Liberty Bank that was secured by their

personal residence, located at 2267 Potomac Court in Auburn, Alabama ("the Residence"). In

addition to their obligation under the note, the Danleys were required under the terms of their

mortgage to maintain insurance and pay ad valorem taxes on the Residence as they came due.

(Exhibit A)[2]; Danley, 540 B.R. at 473.

### B.  The Danleys' Prior Bankruptcy Cases

On November 1, 2007, Liberty Bank sent the Danleys a notice of default on the

Residence note and scheduled a foreclosure sale for November 29, 2007. (Exhibit A). The

---

[2]  All of the Exhibits cited in this opinion were those attached to Liberty Bank's motion for summary judgment, (Doc. 16), and the Danleys' response to the motion, (Doc. 23). The Court will designate Liberty Bank's exhibits with letters and the Danleys' exhibits with numbers.

Case 15-08061    Doc 31    Filed 07/11/16    Entered 07/11/16 09:03:48    Desc Main
Document    Page 2 of 33

Danleys filed Chapter 13 bankruptcy (later converted to Chapter 11) on November 28, 2007, but the case was subsequently dismissed due to their failure to file monthly operating reports. (Exhibit A). On August 8, 2008, Liberty Bank sent the Danleys a second notice of default on the Residence note and gave them until September 10, 2008 to cure the default, and the Danleys filed Chapter 11 bankruptcy on September 9, 2008. (Exhibit A). The Court confirmed a plan in that case but the Danleys failed to perform under its terms, so the Court dismissed the case without granting them a discharge. (Exhibit A). On June 26, 2014, Liberty Bank advised the Danleys that it was accelerating the Residence note and scheduled a foreclosure sale for July 21, 2014. (Exhibit A). Stephanie Danley filed Chapter 13 bankruptcy on July 20, 2014, but voluntarily dismissed the case three months later without a confirmed plan. (Exhibit A).

### C. The Danleys' Current Bankruptcy Case

Liberty Bank sent the Danleys a notice of acceleration on the Residence note on June 4, 2015, and scheduled a foreclosure sale for July 22, 2015. Danley, 540 B.R. at 472; (Exhibit B). The Danleys filed Chapter 11 bankruptcy on July 22, 2015, and Liberty Bank soon after moved for *in rem* relief from the automatic stay under 11 U.S.C. § 362(d)(4)(B).[3] Danley, 540 B.R. at 472. The Court held an evidentiary hearing on September 16, 2015, at which it heard testimony from both of the Danleys and from Roger Dale Selph ("Selph"), Liberty Bank's senior vice president. Id. at 472-73; (Exhibit C). Selph testified that the debt on the Residence note had grown to $474,354.78, that the Danleys had not made a payment since November 2012, and that

_____

[3] "[A] secured creditor who obtains relief from the automatic stay under § 362(d)(4) may record the order like one would record a mortgage or judgment lien, and the order of relief will be effective as to the subject real property in all subsequent bankruptcy cases filed by anyone within the next two years." Danley, 540 B.R. at 476.

-3-

Liberty Bank had been forced to pay ad valorem taxes and carry insurance on the Residence since 2010.  (Exhibit C); Danley, 540 B.R. at 473.  The Danleys offered no credible evidence to contradict Selph's testimony, and at the conclusion of the hearing the Court granted Liberty Bank *in rem* relief from the automatic stay.[4]  Danley, 540 B.R. at 473-74.  On the motion of the Bankruptcy Administrator, the Court subsequently converted the Danleys' bankruptcy case to Chapter 7.  (Case No. 15-80960, Doc. 128).  It is still pending.

### D.  The Foreclosure Sale

Liberty Bank scheduled a foreclosure sale for November 5, 2015, and published notice of the impending sale in the Opelika-Auburn Daily News on October 15, October 22, and October 29, 2015.  (Exhibits B and D).  The Danleys moved to alter, amend, or vacate the Court's order granting Liberty Bank *in rem* relief, and the Court denied their motion on November 2, 2015.  Danley, 540 B.R. at 480-81.  The Danleys appealed to the district court, which denied their request for a stay of the foreclosure sale on November 4, 2015.  Danley v. Liberty Bank & Trust Co., 2015 U.S. Dist. LEXIS 149330, *2-3 (M.D. Ala. Nov. 4, 2015).  Liberty Bank purchased the Residence at the November 5 foreclosure sale for $414,600.00 and properly recorded its deed the same day.  (Exhibit D).

The same day as the foreclosure sale, Liberty Bank mailed a letter to the Danleys demanding that they vacate the Residence within ten days.  (Exhibit E).  The Danleys did not comply with the demand letter.

### E.  The Adversary Proceeding

---

[4]  The Court also granted Liberty Bank *in rem* relief from the automatic stay so that it could foreclose on a mortgage secured by certain rental properties owned by the Danleys.  The rental properties are not at issue in this adversary proceeding.

-4-

On November 17, 2015, Liberty Bank sued the Danleys for ejectment in the Circuit Court of Lee County, Alabama ("the State Court"). (Doc. 1). Stacy Danley, then represented by counsel, answered the ejectment complaint with a general denial, and asserted a counterclaim of $100,000 on the grounds that the foreclosure was wrongful because Liberty Bank had refused to accept payments he had tendered.[5] (Doc. 1). Stacy Danley also demanded a jury trial on all counts. Liberty Bank removed the action to this Court, filed an answer denying the counterclaim, and moved for default judgment against Stephanie Danley. (Docs. 1, 3, and 4). Stephanie Danley, acting *pro se*, answered with a denial and filed her own counterclaim on February 29, 2016, seeking to have the foreclosure deed set aside on the basis that Liberty Bank had refused to accept payments tendered; she also demanded a jury trial.[6] (Doc. 13).

Liberty Bank filed the instant motion for summary judgment on all counts on May 10, 2016. (Doc. 16). In support of its motion, Liberty Bank offers the following evidence: the stipulation of facts between it and the Danleys in advance of the September 16, 2015 hearing (Exhibit A); an affidavit signed by its counsel, Leonard Math, along with a notice of default and the right to cure dated January 31, 2014 (Exhibit B); part of the transcript of the September 16, 2015 hearing (Exhibit C); the foreclosure deed (Exhibit D); the letter demanding that the Danleys

---

[5] Stephanie Danley was not included in the answer and counterclaim filed in the State Court.

[6] It is unclear whether the Danleys also intended this filing as an amendment of Stacy Danley's earlier counterclaim. It lists both Stacy and Stephanie Danley in the heading and is signed by both, but is not designated as an amendment and the typed signature only bears Stephanie Danley's name. It alleges facts and claims identical to Stacy Danley's counterclaim, except that it omits a claim for money damages. Because the filing is not clearly an amendment of Stacy Danley's counterclaim, the Court will treat it solely as Stephanie Danley's answer and counterclaim.

-5-

vacate the Residence (Exhibit E); interrogatories, requests for production, and requests for admission served upon Stacy Danley (Exhibit F); interrogatories, requests for production, and requests for admission served upon Stephanie Danley (Exhibit G); and an affidavit of substantial hardship filed by the Danleys in a 2014 case in the State Court[7] (Exhibit H).

Two days after Liberty Bank filed its motion the Court scheduled a hearing on it for June 15, 2016. (Doc. 17). On the afternoon of June 14, 2016, the Danleys – now acting *pro se* – moved to continue the hearing and moved for remand or abstention.[8] (Docs. 19 and 20). At the June 15 hearing, Stacy Danley represented that he had not received notice of Liberty Bank's motion for summary judgment, but this was refuted by Liberty Bank's counsel and by the Court's own bankruptcy notices. The Court denied the motion to continue but gave the Danleys one extra week to respond to the motion for summary judgment.[9] (Doc. 21). The Danleys filed their response, along with a supplement to their motion for remand or abstention, on June 22, 2016. (Doc. 23). Attached to the Danleys' response was the following evidence: a copy of the mortgage on the Residence (Exhibit 1); an email from Leonard Math to attorney Michael Fritz

---

[7] Just prior to Stephanie Danley's Chapter 13 bankruptcy in 2014, the Danleys filed a *pro se* complaint in the State Court and requested a temporary restraining order to prevent a foreclosure sale Liberty Bank had scheduled for three days later. Danley, 540 B.R. at 471-72. Stephanie's bankruptcy followed when the State Court did not act on their motion. *Supra* Part I(B).

[8] The Court expressed skepticism at the June 15 hearing that the Danleys drafted their motion for remand or abstention independent of legal help, because the quality of the draftsmanship and analysis far exceeds not only the Danleys' other *pro se* filings, but also most of the filings the Court receives from attorneys.

[9] Both Liberty Bank and the Danleys made additional filings after the Court's June 22 deadline. (Docs. 27-30). Because these filings were proffered after the Court's deadline, *see* (Doc. 21), the Court will not consider them for purposes of ruling on the instant motions.

-6-

(the Danleys' initial counsel in their current bankruptcy case) (Exhibit 2); and an email from attorney Sam Stephens (part of the Danleys' second counsel in their current bankruptcy case) to Stacy Danley that forwarded an email from Math to Stephens (Exhibit 3).

## II.  JURISDICTION, ABSTENTION, & ADJUDICATORY POWER

### A.  Removal Jurisdiction

"A party may remove any claim or cause of action in a civil action" in a state court "to the district court for the district where such civil action is pending" if 28 U.S.C. § 1334 provides the district court with jurisdiction over the claim or cause of action. 28 U.S.C. § 1452(a). In the supplement to their motion to remand or abstain, the Danleys cite Scott v. Communications Servs., Inc., 762 F. Supp. 147 (S.D. Tex. 1991), for the proposition that Liberty Bank's removal was improper because counterclaim-defendants cannot remove cases to federal court. However, Scott has no application to this case because it involved an attempted removal under 28 U.S.C. § 1441(a) on the basis of diversity of citizenship. Scott, 762 F. Supp. at 149-50. While the plain language of § 1441(a) specifically reserves removal power under that section solely for the original defendant,[10] the language of § 1452(a) just as plainly allows any "party" to remove a case on the basis of bankruptcy jurisdiction. See Palisades Collections LLC v. Shorts, 552 F.3d 327, 333 (4th Cir. 2008) (comparing § 1441(a) to § 1452(a)); First Nat'l Bank of Pulsaki v. Curry, 301

---

[10]  Section 1441(a) states: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

F.3d 456, 463 (6th Cir. 2002) (same). Liberty Bank's status as a plaintiff/counterclaim-defendant does not divest it of the authority to remove this case to federal court under § 1452(a).

To the extent that a district court has jurisdiction of a matter under 28 U.S.C. § 1334, Congress has authorized it to refer the matter to a bankruptcy court under 28 U.S.C. § 157(a), and the District Court for the Middle District of Alabama has done so with respect to this Court. *See* Gen. Order of Reference: Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Therefore, the next issue is whether this Court – via the District Court – has jurisdiction under 28 U.S.C. § 1334.

### 1. 28 U.S.C. § 1334(e)(1): *In Rem* Jurisdiction

Liberty Bank asserted in its notice of removal that the Court has *in rem* jurisdiction pursuant to 28 U.S.C. § 1334(e)(1), which provides that the "district court in which a case under [the Bankruptcy Code] is commenced or is pending" has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of the case, and of property of the estate[.]" 28 U.S.C. § 1334(e)(1). The Court disagrees.

### a. The Residence

The Court had *in rem* jurisdiction over the Residence when the Danleys filed bankruptcy. However, a bankruptcy court's *in rem* jurisdiction over property only lasts so long as that property remains in the estate; if the property leaves the estate, *in rem* jurisdiction lapses. Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990); In re Hall's Motor Transit, Co., 889 F.2d 520, 522 (3d Cir. 1989); Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.), 813 F.2d 127, 131 (7th Cir. 1987). Liberty Bank foreclosed on the Residence on November 5, 2015, at which point the Danleys – and by extension the bankruptcy estate – lost all legal and equitable title to the Residence. *See* Commercial Fed. Mortg. Corp. v. Smith (In re

-8-

Smith), 85 F.3d 1555, 1558 (11ᵗʰ Cir. 1996). Alabama law provides for a one-year statutory right

of redemption upon the foreclosure of a mortgage on real property, ALA. CODE § 6-5-248(b),

and such a right will typically remain property of the estate, *see* Wragg v. Fed. Land Bank of

New Orleans, 317 U.S. 328-29 (1943). However, the Danleys forfeited their right of redemption

because they failed to vacate the Residence within the time demanded by Liberty Bank. *See*

ALA. CODE § 6-5-251; In re Read, 131 B.R. 188, 189 (Bankr. M.D. Ala. 1991). Therefore, the

Danleys hold nothing more than bare, wrongful possession of the Residence, and the bankruptcy

estate has no interest in the Residence. This Court has no *in rem* jurisdiction over the Residence

that can be exercised pursuant to 28 U.S.C. § 1334(e)(1). Read, 131 B.R. at 189. Liberty Bank

cannot use § 1334(e)(1) as a basis for jurisdiction on its ejectment action.

### b. Stacy Danley's Counterclaim

Stacy Danley's counterclaim arose pre-petition because it is based on Liberty Bank's

alleged wrongful refusal to accept payments on the note and mortgage for the Residence. It

became property of the estate when the Danleys filed bankruptcy and, unlike the Residence,

remains property of the estate because the Chapter 7 Trustee has not abandoned it.[11] However,

the scope of a bankruptcy court's *in rem* jurisdiction is limited to the property's disposition in the

underlying bankruptcy. While the Court has jurisdiction under § 1334(e)(1) to decide who will

get paid from Stacy Danley's counterclaim in the event of a recovery, it does not have

jurisdiction under § 1334(e)(1) to decide the merits of Stacy Danley's counterclaim. This

conclusion is borne out not only by the plain language of § 1334(e), but also by the practical

---

[11] The Trustee filed a motion in the Danleys' underlying bankruptcy to reserve for the estate all of the Danleys' pre-petition causes of action pursuant to 11 U.S.C. § 554(c). The Court granted the Trustee's motion on May 31, 2016. (Case No. 15-80960, Docs. 170 and 171).

implications of a broader interpretation of *in rem* jurisdiction. For example, a bankruptcy court is routinely asked to approve settlements from state law tort and contract claims because the claims are property of the estate, and fall under the bankruptcy court's *in rem* jurisdiction to distribute the proceeds to creditors. If the bankruptcy court's *in rem* jurisdiction gave it the power to decide the merits of these claims, 28 U.S.C. §§ 1334(b)-(d) would be rendered superfluous and the state court would be divested of the power to decide these state law claims because § 1334(e)(1) jurisdiction is exclusive. That result is untenable.

By removing the counterclaim to this Court and moving for summary judgment, Liberty Bank is asking the Court to issue a ruling in its favor on the merits of the counterclaim. The Court may not do so on the basis of its *in rem* jurisdiction. The Court concludes that § 1334(e)(1) does not provide it with jurisdiction to decide this adversary proceeding.

## 2. 28 U.S.C. § 1334(b): "Arising . . . Under" Jurisdiction

Section 1334(e) is not a bankruptcy court's only source of jurisdiction, because Congress has also provided district courts with "original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in . . . cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). "'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code." Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999). "The 'arising in a case under' category is generally thought to involve administrative-type matters, [or] matters that could only arise in bankruptcy." Id. (internal citation and quotation marks omitted). Liberty Bank's ejectment action and the Danleys' counterclaims arise out of Alabama law, not the Bankruptcy Code, and

-10-

are not dependent on the Danleys' bankruptcy case for their existence. There is no "arising under" or "arising in a case under" jurisdiction for this adversary proceeding.

### 3. 28 U.S.C. § 1334(b): "Related To" Jurisdiction

Finally, Congress has conferred upon district courts "original but not exclusive jurisdiction of all civil proceedings . . . related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b). "The 'related to' connection [is] the minimum for bankruptcy jurisdiction." Toledo, 170 F.3d at 1345 (internal quotation marks omitted). "'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990) (quoting and adopting the test set forth in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Thus, "[p]roceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 307 n.5 (1995).

### a. Ejectment Claim

Liberty Bank's ejectment action arguably alters the Danleys' "rights, . . . options, or freedom of action" but it in no way impacts the bankruptcy estate. It cannot possibly have any effect on the bankruptcy trustee's distribution to creditors. Nor is a final ruling in the ejectment

action necessary to decide the counterclaims. The ejectment action is not sufficiently linked to the Danleys' bankruptcy case to provide this Court jurisdiction under 28 U.S.C. § 1334(b). Because the Court lacks subject-matter jurisdiction over the ejectment action, it will remand that claim back to the State Court. *See* 28 U.S.C. § 1452(b).

### b. The Danleys' Counterclaims

Stacy Danley's counterclaim is a different matter because, if he is victorious, the resulting money damages will augment the distribution in the estate. He informed the Court at a hearing in February 2016 that he never intended to demand money damages, and that his counsel at the time included the demand in his counterclaim without his authorization. However, Stacy Danley has not amended or dismissed his counterclaim in writing. *Supra* note 6. His oral representations before the Court are not by themselves sufficient to nullify his written counterclaim. The Danleys also argue in their motion to remand or abstain that Stacy Danley's counterclaim is a nullity because he failed to pay the filing fee for it in the State Court. This argument is without merit because an unpaid filing fee in a state court does not nullify a claim in a federal court.

Stephanie Danley's counterclaim is a closer call because she did not claim money damages. If her wrongful foreclosure claim is successful, however, her rights and options regarding the Residence will expand, the Residence itself will re-enter the bankruptcy estate (subject to Liberty Bank's reinstated mortgage), and Liberty Bank would presumably have a large deficiency claim against the bankruptcy estate. Therefore, it is "related to" their bankruptcy case pursuant to 28 U.S.C. § 1334(b). *Cf.* Land Ventures for 2, LLC v. Fritz, --- B.R. ----, 2015 WL 6660188, *2 (M.D. Ala. Oct. 29, 2015) (holding that a corporate Chapter 7 debtor's malpractice

-12-

claim against its bankruptcy attorney was "related to" its bankruptcy case), *appeal docketed*, No. 15-15303 (11th Cir. Nov. 30, 2015).

### c. The Well-Pleaded-Complaint Rule

Finally, the Danleys argue in their motion to remand or abstain that the Court lacks jurisdiction over their counterclaims under the well-pleaded-complaint rule because there is no basis for federal jurisdiction in Liberty Bank's complaint. This argument misapplies the well-pleaded-complaint rule. The rule requires that a federal question appear on the face of a well-pleaded complaint in order for a federal court to exercise federal "arising under" jurisdiction. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152-53 (1908). If there is no federal question evident from the complaint, federal "arising under" jurisdiction cannot be based on an anticipated federal law defense or on a counterclaim. Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831-32 (2002). However, the well-pleaded-complaint rule only applies to assertions of jurisdiction "arising under" federal law, such as federal question jurisdiction (28 U.S.C. § 1331) or patent and copyright jurisdiction (28 U.S.C. § 1338(a)). Am. Nat'l Red Cross v. S.G., 505 U.S. 247, 258 (1992) (holding that the well-pleaded-complaint rule did not apply to the Red Cross's jurisdictional authorization "to sue and be sued"); *see also* Holmes Group, Inc., 535 U.S. at 829-30 (applying the well-pleaded-complaint rule to 28 U.S.C. § 1338(a) because of the statute's "arising under" language).

In the context of bankruptcy jurisdiction under 28 U.S.C. § 1334(b), application of the well-pleaded-complaint rule is limited to "arising under" jurisdiction; *i.e.*, if bankruptcy jurisdiction is asserted solely on claims invoking a substantive right under the Bankruptcy Code, those claims must be pled on the face of the complaint. Principal Life Ins. Co. v. JP Morgan

-13-

Chase Bank, N.A. (In re Brook Mays Music Co.), 363 B.R. 801, 815 (Bankr. N.D. Tex. 2007).

The well-pleaded-complaint rule has no application to § 1334(b) "arising in a case under" or "related to" jurisdiction.[12] Id.; *see also* McIntyre Land Co. v. McIntyre Bldg. Co. (In re McIntyre Bldg. Co.), 2011 WL 1434691, *12 (Bankr. M.D. Ala. Apr. 14, 2011).

The Danleys' counterclaims could conceivably impact the administration of their bankruptcy estate by augmenting the distribution to their creditors and by altering their own rights. Therefore, they are "related to" the Danleys' bankruptcy within the meaning of 28 U.S.C. § 1334(b). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1452(a).

## B. Mandatory Abstention

The Danleys argue in their motion for remand or abstention that, even if the Court has subject-matter jurisdiction in this case, the Court is required to abstain from hearing it pursuant to 28 U.S.C. § 1334(c)(2). That section provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under [the Bankruptcy Code] but not arising under [the Bankruptcy Code] or arising in a case under [the Bankruptcy Code], with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Mandatory abstention applies not only to cases filed in the first instance

---

[12] The Supreme Court's decision in Rivet v. Regions Bank of La., 522 U.S. 470 (1998), does not compel a different result. *See* McIntyre Land Co. v. McIntyre Bldg. Co. (In re McIntyre Bldg. Co.), 2011 WL 1434691, *12-13 (Bankr. M.D. Ala. Apr. 14, 2011) (explaining and distinguishing Rivet). Rivet considered whether there was federal question jurisdiction under 28 U.S.C. § 1331 based on the claim preclusive effect of a bankruptcy court order several years earlier to sell estate property free and clear of liens. Id. It has no application to bankruptcy "related to" jurisdiction.

-14-

in a bankruptcy court, but also to cases that have been removed to a bankruptcy court pursuant to 28 U.S.C. § 1452(a). <u>Christo v. Padgett</u>, 223 F.3d 1324, 1331 (11th Cir. 2000). There is a narrow statutory exception to the application of mandatory abstention: "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" is not subject to mandatory abstention even if all the requirements of § 1334(c)(2) are met. 28 U.S.C. §§ 157(b)(2)(B) and (b)(4). That exception does not apply here.

A bankruptcy court must abstain pursuant to § 1334(c)(2) from hearing a case if the movant can meet the following six requirements: (1) the motion to abstain is "timely," (2) the action is based on a state law claim, (3) the bankruptcy court only has "related to" jurisdiction under § 1334(b), (4) the district court has no independent basis for federal jurisdiction other than § 1334, (5) an action must be commenced in state court,[13] and (6) the action must be capable of timely adjudication in state court. <u>Personette v. Kennedy (In re Midgard Corp.)</u>, 204 B.R. 764, 776-78 (10th Cir. B.A.P. 1997). Though the Danleys' analysis of these requirements is uneven, the last five requirements appear to be met in this case.

The timeliness of the Danleys' motion to abstain is a different matter. Neither § 1334(c)(2) nor the Federal Rules of Bankruptcy Procedure define when a motion for abstention is

---

[13] Some courts hold, based on the "is commenced" language in § 1334(c)(2), that mandatory abstention applies only if the state court action preceded the commencement of the bankruptcy case. <i>E.g.</i>, <u>Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)</u>, 449 B.R. 860, 877 (Bankr. M.D.N.C. 2011). This case did not, but the Court rejects <u>Freeway Foods</u> because it reads a limitation into the "is commenced" language of § 1334(c)(2) that simply does not exist. <i>Cf.</i> <u>Christo</u>, 223 F.3d at 1331 (refusing to read a removal exception into the "is commenced" language of § 1334(c)(2)). The "is commenced" language requires that a state court action has been commenced, nothing more. Mandatory abstention can apply even if the state court case post-dated the bankruptcy.

-15-

"timely,"[14] but the Bankruptcy Appellate Panel for the Tenth Circuit held that "'a party acts in a timely fashion when he or she moves as soon as possible after he or she should have learned the grounds for such a motion.'" Midgard Corp., 204 B.R. at 776 (quoting Novak v. Lorenz (In re Novak), 116 B.R. 626, 628 (N.D. Ill. 1990)). The Court agrees with and adopts this definition of "timely" for § 1334(c)(2).

Liberty Bank removed the case to this Court on December 21, 2015. The Court called this case for hearing on February 10 and on March 9, 2016, during which at least part of the time Stacy Danley was represented by counsel. Stephanie Danley answered on February 29, 2016. Liberty Bank filed its motion for summary judgment on May 10, 2016, and the Court scheduled a hearing on the motion for June 15, 2016. Despite all that activity, the Danleys did not move to abstain until the afternoon of June 14, 2016, nearly six months after the case was removed and on the eve of the summary judgment hearing. Even acknowledging that the Danleys are *pro se*, that is too long of a delay. The Court holds that the Danleys have waived their right to require the Court to abstain from this case pursuant to § 1334(c)(2) because their motion is not timely.

### C. Discretionary Abstention

Alternatively, the Danleys ask the Court to exercise its discretion to abstain from the case. The Court's discretionary power to abstain arises out of 28 U.S.C. § 1334(c)(1), which provides that "[e]xcept with respect to a case under chapter 15 of [the Bankruptcy Code], nothing . . . prevents a district court in the interest of justice, or in the interest of comity with State courts or

---

[14] Bankruptcy Rule 9006(d) – which is incorporated by Bankruptcy Rule 9014(b), which itself is incorporated by Bankruptcy Rule 5011(b), dealing with abstention – requires that a motion for abstention must be served on the opposing party at least seven days prior to the hearing on the motion. FED. R. BANKR. P. 9006(d). That rule has no bearing on whether the motion is timely filed.

-16-

respect for State law, from abstaining from hearing a particular proceeding arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code]." 28 U.S.C. § 1334(c)(1). This Court has adopted the following twelve factors to consider in determining whether to abstain:

> (1) the effect on the efficient administration of the bankruptcy estate;
>
> (2) whether state law issues predominate over bankruptcy issues;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts;
>
> (5) the jurisdictional basis, if any, other than § 1334;
>
> (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case;
>
> (7) the substance rather than the form of an asserted "core" proceeding;
>
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;
>
> (9) the burden on the bankruptcy court's docket;
>
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>
> (11) the existence of a right to a jury trial; and
>
> (12) the presence in the proceeding of non-debtor parties.

Alexander v. Cintas Corp. (In re Terry Mfg. Co.), 324 B.R. 147, 154 (Bankr. M.D. Ala. 2005)

(citing Retirement Sys. of Ala. v. Merrill Lynch & Co., 209 F. Supp. 2d 1257, 1267-68 (M.D.

Ala. 2002)).  All of the factors listed above admittedly weigh in favor of abstention.

Nevertheless these factors are non-exclusive, id., and there are other reasons in this case why the

Court should not, and will not, voluntarily abstain from determining the merits of the Danleys'

counterclaims.  To put it bluntly, the Court to a large extent already decided the merits of the

counterclaims – twice – when it granted Liberty Bank *in rem* relief from the automatic stay after

a three-hour evidentiary hearing and when it denied the Danleys' motion to alter, amend, or

vacate that ruling.  *See* Danley, 540 B.R. at 472-73.  To allow the State Court to revisit the merits

of the Danleys' counterclaims would risk inconsistent judgments.  Additionally, this Court is

very familiar with the facts of this case, unlike the State Court, and can promote judicial

economy by disposing of the counterclaims itself.  Therefore, the Court declines to abstain from

hearing the Danleys' counterclaims.

### D.  Equitable Remand

Finally, the Danleys ask the Court to exercise its discretionary power to remand the case.

"The court to which such claim or cause of action is removed may remand such claim or cause of

action on any equitable ground."  28 U.S.C. § 1452(b).  This Court has listed the following as

potentially equitable grounds for a remand: (1) forum non conveniens, (2) a state court's

heightened ability to deal with questions of state law, (3) the expertise of a particular court, (4)

the duplicative or uneconomic effort of judicial resources in two forums, (5) prejudice to

involuntarily removed parties, (6) comity consideration, and (7) the lessened possibility of

inconsistent results.  Gaston v. Condra (In re Condra), 212 B.R. 987, 992 (Bankr. M.D. Ala.

1997).  The Court could justify a remand of this case on a couple of these grounds.  Nevertheless,

for the reasons already discussed in declining to abstain, *supra* Part II(C), the Court declines to

remand as well. The Court will therefore deny the Danleys' motion for remand or abstention as to their counterclaims.

## E. Adjudicatory Power

This is a non-core proceeding over which the Court lacks the power to enter a final judgment absent consent of the parties. *See* 28 U.S.C. § 157(c)(1). However, a litigant may waive his or her right to an Article III adjudicator by litigating before a bankruptcy court and failing to expressly refuse consent to adjudication by the bankruptcy court. Feggins v. LVNV Funding, LLC (In re Feggins), 540 B.R. 895, 900 (Bankr. M.D. Ala. 2015); *see also* Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1947-48 (2015); 28 U.S.C. § 157(c)(2).

Liberty Bank's consent can be implied from its removal of the case to this Court in December 2015. As for the Danleys, the Court has held several hearings on this case since then at which Stacy Danley has appeared and advocated, and Stephanie Danley has filed an answer and counterclaim. Yet at no time did the Danleys indicate their refusal to consent to adjudication by the Court until they filed their motion for remand or abstention, almost six months after the case was removed and on the eve of a summary judgment hearing. Such a long delay vitiates their refusal.

The Danleys have not completely waived their right to an Article III adjudicator, however, because they timely demanded a jury trial on their counterclaims and did not expressly consent to having it conducted by this Court. Bankruptcy courts can conduct jury trials only "with the express consent of all the parties." 28 U.S.C. § 157(e).[15] When a litigant holds a

---

[15] Section 157(e) also prohibits a bankruptcy court from hearing a jury trial unless the district court expressly authorizes it to do so, but the District Court has provided that authority to this Court. 28 U.S.C. § 157(e); DePaola v. Sleepy's LLC (In re Prof'l Facilities Mgmt., Inc.), 61

-19-

constitutional right to a jury trial that the bankruptcy court lacks statutory authority to preside

over, the case must be referred to an Article III adjudicator to conduct the trial.  *See*

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 52 (1989).  That said, a litigant's constitutional

right to have disputed facts determined by a jury does not divest the bankruptcy court of the

power to adjudicate the case on undisputed facts when the bankruptcy court otherwise has such

power, whether by consent of the parties or because the matter is a "core" proceeding.  While the

Danleys have preserved their right to a jury trial in front of an Article III adjudicator (assuming,

*arguendo*, that the right to a jury trial attaches to their counterclaims), their jury demand does not

preclude the Court from deciding the merits of Liberty Bank's summary judgment motion.  The

Court holds that the Danleys have waived their right to an Article III adjudicator and consented to

adjudication by the Court to the extent that an adjudication can be made without conducting a

trial.  The Court has the power to adjudicate Liberty Bank's motion for summary judgment.


### III.  MOTION FOR SUMMARY JUDGMENT

### A.  Wrongful Foreclosure[16]

A claim of wrongful foreclosure in Alabama "is an open-ended equitable action rising

from the trust relationship between a mortgagor and a mortgagee."  Sharpe v. Wells Fargo Home

Mortg. (In re Sharpe), 391 B.R. 117, 152 (Bankr. N.D. Ala. 2008).  "A mortgagor has a wrongful

---

Bankr. Ct. Dec. 203, 74 Collier Bankr. Cas. 2d 1115, 2015 WL 6501231, *3 (Bankr. M.D. Ala.
Oct. 27, 2015).

[16]  *See generally* Sharpe v. Wells Fargo Home Mortg. (In re Sharpe), 391 B.R. 117, 151-
56 (Bankr. N.D. Ala. 2008) (Cohen, J.), for a more extensive discussion of wrongful foreclosure
law in Alabama.

foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n, 607 So. 2d 180, 182 (Ala. 1992). A mortgagee is in a position of "trust" relative to the mortgagor that, while not rising to the level of a fiduciary duty, obligates the mortgagee to act under "a duty of fairness and good faith to the mortgagor" in executing a power of sale. Ames v. Pardue, 389 So. 2d 927, 931 (Ala. 1980); *see also* Brabham v. Am. Nat'l Bank of Union Springs, 689 So. 2d 82, 88 (Ala. Civ. App. 1996); Atkins v. GE Capital Mortg. Servs., Inc., 993 F. Supp. 1406, 1418 (M.D. Ala. 1998). That said, "if an action by a mortgagee was *for the purpose of securing the debt owed by the mortgagor*, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." Sharpe, 391 B.R. at 153 (emphasis in original).

A claim of wrongful foreclosure will therefore arise in any of the following situations: "(1) the actions of the mortgagee were either outside the boundaries of the foreclosure or taken for some purpose other than to secure the debt owed by the mortgagor; (2) the actions of the mortgagee were for some ulterior motive; (3) the power of sale was perverted or used for the mortgagee's or someone else's purpose; or (4) the mortgagee had an ill motive."[17] Id. at 152-53;

---

[17] A foreclosure sale may also be wrongful if the purchase price "is so inadequate as to shock the conscience," such that it "raise[s] a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be[comes] sufficient ground for setting the sale aside." First Nat'l Bank v. Wise, 177 So. 636, 638 (Ala. 1937). The purchase price is particularly scrutinized when the mortgagee becomes the purchaser at the sale. Appelbaum v. First Nat'l Bank, 179 So. 373, 375 (Ala. 1938). The Danleys have not challenged the adequacy of the purchase price and the amount Liberty Bank paid is facially reasonable, so the Court need not consider this issue further.

*see also* Johnson v. Shirley, 539 So. 2d 165, 168 (Ala. 1988); Paint Rock Properties v. Shewmake, 393 So. 2d 982, 983-84 (Ala. 1981).

### B.  Standard of Review

Motions for summary judgment are governed by Rule 56(a), which requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a), as incorporated by FED. R. BANKR. P. 7056.  A material fact is one "that might affect the outcome of the suit under governing law. . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Id.

The party seeking summary judgment has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The [bankruptcy] court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor."  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

### C.  Evidence Supporting Liberty Bank

The Danleys would bear the burden of proof at trial on their wrongful foreclosure counterclaims, so Liberty Bank can prevail on its motion by either showing "an absence of evidence" to support the Danleys' counterclaims or by presenting "affirmative evidence demonstrating that [the Danleys] will be unable to prove [their] case at trial."  Id. at 1115-16 (internal quotation marks omitted).  Liberty Bank is not required to produce affirmative evidence negating the Danleys' claims.  *See* Celotex Corp., 477 U.S. at 323.

-22-

In addition to proffering the exhibits listed above, *supra* Part I(E), Liberty Bank asks the Court to take judicial notice of the proceedings in the Danleys' current bankruptcy case, Stephanie Danley's 2014 Chapter 13 bankruptcy case, and the Danleys' 2014 *pro se* action in the State Court (*supra* note 7). The Court will take judicial notice of those proceedings. *See* FED. R. EVID. 201(b)(2), as incorporated by FED. R. BANKR. P. 9017.

## 1. Facts Deemed Admitted by the Danleys

Liberty Bank sent the Danleys requests for admission regarding the following facts:

> No payments have been made or delivered by Stacy Danley, II and/or Stephanie Danley to First Tuskegee Bank or Liberty Bank and Trust Company since January 2014.

> No payments have been returned by First Tuskegee Bank or Liberty Bank and Trust Company to Stacy Danley, II and/or Stephanie Danley since January 2014.

(Exhibits F and G). Liberty Bank served the Danleys with these requests for admission on March 14, 2016, and the Danleys have not responded to them. "A matter is admitted unless, within 30 days after being served, the party to whom the request is being directed serves on the requesting party a written answer or objection addressed to the matter. . . ." FED. R. CIV. P. 36(a)(3), as incorporated by FED. R. BANKR. P. 7036. By failing to respond to Liberty Bank's requests for admission, the Danleys have admitted that they did not tender payments, and Liberty Bank did not return payments, after January 2014.

## 2. Preclusive Effect of the Court's *In Rem* Relief Orders

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent

-23-

suit between the same parties or their privies. . . ." <u>Montana v. United States</u>, 440 U.S. 147, 153

(1979) (quoting <u>Southern Pac. R.R. Co. v. United States</u>, 168 U.S. 1, 48-49 (1897)) (ellipses in

original). Liberty Bank argues that preclusive effect should be given to the Court's orders

granting Liberty Bank *in rem* relief from the automatic stay and refusing to alter, amend, or

vacate the relief order.

### a. Res Judicata

"Res judicata, also known as claim preclusion, bars the parties from re-litigating a cause

of action that was or could have been raised in that action." <u>Baldwin v. Citigroup, Inc. (In re</u>

<u>Baldwin)</u>, 307 B.R. 251, 260 (M.D. Ala. 2004). "To demonstrate that res judicata applies, the

party asserting the bar must prove that (1) there was a prior judgment on the merits, (2) entered

by a court of competent jurisdiction, (3) with substantial identity of the parties or their privies,

(4) involving the same cause of action." <u>Id.</u> "If the later litigation arises from the same cause of

action, then the judgment bars litigation not only of 'every matter which was actually offered and

received to sustain the demand, but also [of] every [claim] which might have been presented.'"

<u>Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)</u>, 898 F.2d 1544, 1549 n.3 (11th Cir.

1990) (quoting <u>Baltimore S.S. Co. v. Phillips</u>, 274 U.S. 316, 319 (1927)) (brackets in original).

The Court concludes that res judicata is inapplicable in this case. Liberty Bank cannot

preclude the Danleys' wrongful foreclosure counterclaims altogether on the basis of the Court's

order of *in rem* relief because the foreclosure had not happened when the Court issued its order;

in fact, the whole point of the Court's order was so that Liberty Bank could proceed with

foreclosure. The same is true of the Court's order denying the Danleys' motion to alter, amend,

or vacate its order of relief. *See* <u>Danley</u>, 540 B.R. at 480 ("For eight years, the Danleys have

flagrantly used and abused the bankruptcy process to thwart Liberty Bank's realization of its

collateral. . . .").  The foreclosure sale occurred roughly six weeks after the Court's order of *in

rem* relief and three days after it declined to alter, amend, or vacate that order, meaning that the

Danleys' wrongful foreclosure claims accrued after those orders.  Also, it is possible that the

Danleys could have viable wrongful foreclosure claims based on events occurring after one or

both of those orders.  *See generally* ALA. CODE §§ 35-10-12 through 35-10-14 (governing the

required notice and procedure for foreclosure sales).  Therefore, their wrongful foreclosure

counterclaims are not precluded outright by the Court's prior orders.

### b.  Collateral Estoppel

"Under collateral estoppel," also known as issue preclusion, "once an issue is actually and

necessarily determined by a court of competent jurisdiction, that determination is conclusive in

subsequent suits based on a different cause of action involving a party to the prior litigation."

Montana, 440 U.S. at 153.  A party asserting collateral estoppel "must establish that (1) the issue

at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually

litigated in the earlier proceeding; (3) the determination of the issue must have been a critical and

necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is

asserted had a full and fair opportunity to litigate the issue."  Tampa Bay Water v. HDR Eng'g,

Inc., 731 F.3d 1171, 1180 (11th Cir. 2013).  When "the subsequent litigation arises from a

different cause of action, the prior judgment bars litigation only of those matters or issues

common to both actions which were either expressly or by necessary implication adjudicated in

the first."  Justice Oaks II, 898 F.2d at 1549 n.3 (internal quotation marks omitted).  Therefore,

collateral estoppel is narrower in the scope of its preclusion than res judicata is, but broader in its application.

A primary issue in Liberty Bank's motion for *in rem* relief from the automatic stay in the Danleys' bankruptcy case was whether there was "cause" to grant Liberty Bank the authority to foreclose on the Residence notwithstanding the Danleys' bankruptcy. *See* <u>Danley</u>, 540 B.R. at 475; 11 U.S.C. § 362(d)(1). That inquiry necessarily required the Court to consider whether Liberty Bank had the right to foreclose on the Residence under the terms of the mortgage. At the hearing on Liberty Bank's motion, both Stacy and Stephanie Danley (who were ably represented by counsel at the time) testified, and Stacy Danley testified that he had not tendered payments to Liberty Bank since at least 2013.[18] (Exhibit C). Moreover, Selph testified on behalf of Liberty Bank that the Residence loan was over $96,000 in arrears, that the Danleys had last made a payment in November 2012, and that Liberty Bank had been forced to pay the taxes and carry insurance on the Residence since 2010. (Exhibit C). After the Court granted Liberty Bank *in rem* relief from the automatic stay to foreclose on the Residence, the Danleys moved to alter, amend, or vacate the Court's order. In denying the Danleys' motion, the Court stated:

> The evidence of cause in this case was overwhelming. The
> Danleys owe Liberty Bank almost $840,000 on their combined
> loans,[19] and are more than $270,000 in arrears on them. They have

---

[18]  The Court further notes that to the extent the Danleys tendered partial payments, Liberty Bank was well within its rights to refuse them, especially considering that acceptance of such payments could have constituted a waiver on Liberty Bank's part. *See, e.g.*, <u>In re Boone</u>, 281 B.R. 51, 53-54 (Bankr. S.D. Ala. 2001).

[19]  The "combined loans" were for the Residence and the rental properties referenced in footnote 4. The Danleys' loan amount and arrearage on the rental properties were comparable to the amounts for the Residence. <u>Danley</u>, 540 B.R. at 473. The Court granted *in rem* relief from the automatic stay as to both properties.

-26-

> not made a payment on either loan since 2012. Even worse, the
> Danleys have not paid taxes or maintained insurance coverage on
> their properties in five years, forcing Liberty Bank to cover both at
> a cost of over $86,000 (or more than $17,000 per year).

Danley, 540 B.R. at 475 (footnote added).

The Court concludes that collateral estoppel applies in this situation based on the Court's prior orders granting Liberty Bank *in rem* relief from the automatic stay to foreclose on the Residence and denying the Danleys' motion to alter, amend, or vacate its order of relief. The Danleys are precluded from challenging the amount of the delinquency on the Residence loan and from asserting that Liberty Bank wrongfully refused or returned payments they had tendered prior to the September 16, 2015 evidentiary hearing.

### D. Evidence Supporting the Danleys

Liberty Bank has presented conclusive evidence of a substantial delinquency on the Residence note and an absence of evidence suggesting any improper motive on its part in foreclosing on the Residence. Therefore, a showing by the Danleys of any improper motive of Liberty Bank may be made from "overlooked or ignored" evidence in the record or from additional evidence, the sum of which must be sufficient to survive a directed verdict motion at trial. Fitzpatrick, 2 F.3d at 1116-17.

In making such a showing, the Danleys must do more than summarily deny the allegations or merely "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). They "must come forward with specific facts showing that there is a *genuine issue for trial*." Id. at 587 (emphasis in original, internal quotation marks omitted). "Where the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id.

"[I]f the factual context renders [the non-movants'] claim implausible" then the non-movants

"must come forward with more persuasive evidence to support their claim than would otherwise

be necessary." Id.

### 1.  Lack of Notice

The Danleys argue that Liberty Bank breached the terms of the mortgage by failing to

provide a "right to cure notice" thirty days prior to the foreclosure.  This assertion is unfounded.

The Danleys direct the Court to section 22 of the mortgage, which provides in pertinent part:

> Lender shall give notice to Borrower prior to acceleration
> following Borrower's breach of any covenant or agreement. . . .
> The notice shall specify: (a) the default; (b) the action required to
> cure the default; (c) a date, *not less than 30 days* from the date the
> notice is given to Borrower, by which the default must be cured;
> and (d) that failure to cure the default on or before the date
> specified in the notice may result in acceleration of the sums
> secured by this Security Instrument and sale of the Property.

(Exhibit 1) (emphasis added).  In other words, the mortgage requires that at some point at least

thirty days prior to the foreclosure sale, a notice of default and right to cure be provided; there is

no outside time limit.  Liberty Bank provided such a notice on January 31, 2014.  (Exhibit B).

The mortgage did not require Liberty Bank to send a new notice precisely thirty days before the

foreclosure sale.  Once the initial notice was provided, it was sufficient to satisfy the mortgage

requirements unless the Danleys brought the delinquency current after that point.  However, the

Danleys testified at the September 16, 2015 evidentiary hearing that they did not.  (Exhibit C).

Somewhat ironically the Danleys cite Redman v. Fed. Home Loan Mortg. Corp., 765 So.

2d 630 (Ala. 1999), in support of their wrongful foreclosure claims.  In Redman, a mortgagor

-28-

challenged a foreclosure sale on the grounds that she had not received proper notice of the default and foreclosure sale, despite clearly having actual notice. <u>Redman</u>, 765 So. 2d at 633. The Alabama Supreme Court rejected the mortgagor's argument and explained "that to close one's eyes to facts and circumstances reasonably apparent to the ordinary person does not relieve one of the responsibility of what the facts would have revealed if the inquiry they inspired had been made." <u>Id.</u> at 634. The Danleys' situation with respect to the Residence note is analogous to the <u>Redman</u> mortgagor in that they filed four bankruptcies and an action in State Court, all on the eve of a foreclosure sale scheduled by Liberty Bank, yet they now claim they lacked notice of the default and right to cure. (Exhibit A); *supra* Part I(B)-(C). The Danleys' past manipulation of the bankruptcy laws and of this Court in order to stave off foreclosure demonstrate that they clearly understood that the Residence loan was seriously delinquent and that Liberty Bank intended to foreclose unless they brought it current. They cannot now avert their eyes from their own past conduct and claim that they lacked notice of their obligations.

### 2. Improper Cross-Collateralization

The Danleys also discuss with some detail in their response a conversation between Stacy Danley and a "Mrs. Troy Cain" in Liberty Bank's foreclosure department. The Danleys allege that they tried to bring the Residence loan current, but that this "Mrs. Troy Cain" informed them that Liberty Bank would not allow them to do so unless they also brought their rental properties loan current.

Cross-collateralization clauses, also known as "future advance" clauses, are valid in Alabama "to extend the security to other existing indebtedness or to future indebtedness between the same parties[,]" but they must be expressly provided for in the written mortgage or security

-29-

agreement to be enforceable.  Cottingham v. Citizens Bank, 859 So. 2d 414, 419 (Ala. 2003)

(internal quotation marks omitted); *see also* Weatherwax v. Heflin, 12 So. 2d 554, 562 (Ala.

1943).  The Court found no cross-collateralization provision when reviewing the mortgage on the

Residence, suggesting – if what the Danleys say is true – that Liberty Bank acted wrongfully by

refusing to allow the Danleys to cure the Residence loan unless they also cured the rental

properties loan.[20]  (Exhibit 1).  That said, the Danleys offered no evidence to support their

assertion that this conversation with "Mrs. Troy Cain" ever happened.

Even if, however, the Court liberally construes the Danleys' response as an affidavit on

this point pursuant to Rule 56(c)(4), they would still have to show they actually had the

wherewithal to bring the Residence loan current to survive summary judgment.  The Danleys

themselves certainly did not, as evidenced by the affidavit of substantial hardship they filed in

their 2014 State Court case (Exhibit H) and by their Schedule B in their current bankruptcy

case.[21]  The Danleys claim in their response that Stacy Danley has a rich uncle in Connecticut

who was willing and able to pay the funds necessary to bring the Residence loan current, but they

did not timely offer any evidence to support this person's existence.  The Court further notes that

no evidence of this uncle was offered at the September 2015 evidentiary hearing, or in support of

the Danleys' motion to alter, amend, or vacate, when it would have been to the Danleys'

––––––––––––––––––––

[20]  It is possible that the mortgage on the rental properties, which preceded the Residence loan, contained a future advance provision that would pull the Residence within its security. However, that mortgage is not in evidence, and at this procedural posture the Court must infer that it did not contain such a provision.

[21]  In 2015 Stacy Danley obtained a $140,000 judgment for wrongful termination against Alabama State University.  However, this judgment was overturned on appeal.  *See* Ala. State Univ. v. Danley, --- So. 3d ----, 2016 WL 1394830 (Ala. Apr. 8, 2016).

Case 15-08061    Doc 31    Filed 07/11/16    Entered 07/11/16 09:03:48    Desc Main
Document      Page 30 of 33

advantage to introduce such evidence. If the Court were to credit such an implausible claim on such paltry evidence, it would soon find itself haunted by apparitions of wealthy benevolent relatives every time a debtor falls behind on a payment.

The Court concludes that the Danleys have failed to support their improper cross-collateralization argument with evidence sufficient to survive summary judgment.

### 3. The Danleys' Other Arguments

The Danleys made several other assertions in their response: (1) they "had a right to be considered for a loan modification review" based on Liberty Bank's "established policy and agreed-to regulations"; (2) Liberty Bank "manipulated" the Court into granting it *in rem* relief from the automatic stay through the "untruthful and unethical" conduct of its counsel; (3) Liberty Bank failed to disclose a 2009 modification of the Residence loan[22]; (4) the Danleys were not provided a right to cure the default on their Residence loan; and (5) Liberty Bank refused to divulge the exact amount of the delinquency on the Residence. They did not offer a shred of evidence to support any of these allegations. The Danleys also cited ALA. CODE §§ 35-10-11 through 35-10-16, dealing with required notice and procedure for foreclosures, and stated that Liberty Bank violated these provisions, but they did not explain how they were violated or introduce any evidence suggesting that a violation occurred.

Aside from the mortgage, the only evidence the Danleys offer to support their wrongful foreclosure claims are an email from Leonard Math to Michael Fritz that estimated the delinquent balance on the Residence loan at $91,544.88, (Exhibit 2), and an email from Leonard

---

[22] Despite this claim the mortgage that the Danleys proffered as evidence is dated 2006. (Exhibit 1). They did not offer the modification as evidence.

Math to Sam Stephens, that was then forwarded to Stacy Danley, requesting that the Danleys contact Liberty Bank through counsel rather than directly, (Exhibit 3). None of this evidence, nor any evidence proffered by Liberty Bank, suggests that Liberty Bank had any purpose in foreclosing on the Residence other than to collect its collateral. Therefore, the Court is free to grant summary judgment despite the Danleys' assertions. *See* FED. R. CIV. P. 56(e)(3), as incorporated by FED. R. BANKR. P. 7056.

Liberty Bank offered overwhelming evidence to indicate that its purpose in foreclosing on the Residence was to recover its collateral because of an enormous delinquency on its note and mortgage. The Danleys have not presented evidence that would allow a rational jury to find that Liberty Bank had acted with any other purpose, let alone one that was improper. There is no genuine dispute of material fact, and as a matter of law Liberty Bank is entitled to summary judgment on the Danleys' wrongful foreclosure claims.

## IV. CONCLUSION

The Court will GRANT the Danleys' motion to remand Liberty Bank's ejectment action but will DENY their motion to remand, or abstain from hearing, their counterclaims for wrongful foreclosure. The Court will GRANT Liberty Bank's motion for summary judgment on the Danleys' counterclaims, and will take no action on Liberty Bank's motion regarding its ejectment

-32-

claim.  This case is REMANDED to the Circuit Court of Lee County, Alabama.  The Court will

enter separate orders consistent with this opinion.

      Done this 8th  day of July, 2016.

United States Bankruptcy Judge

c: Leonard N. Math, Attorney for Plaintiff
   Stacy Danley II and Stephanie Danley, Defendants
   Cecil Tipton, Trustee